**NOT FOR PUBLICATION**

```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

MIKE TYSON, #440849/#8          :
                                :    Civil Action No. 09-5087 (JBS)
          Petitioner,           :
                                :
     v.                         :    **OPINION**
                                :
GEORGE HAYMAN, *et al.*,        :
                                :
          Respondents.          :

**APPEARANCES:**

Mike Tyson, #440849/#8
Northern State Prison
168 Frontage Road
Newark, NJ  07114
     Petitioner pro se

Nancy P. Scharff, Esq.
Camden County Prosecutor's Office
Motions and Appeals Unit
25 North Fifth Street
Camden, NJ  08102-1231
     Attorney for Respondents

**SIMANDLE,** District Judge:

Petitioner Mike Tyson ("Tyson"), a prisoner currently confined at Northern State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are George Hayman and Larry Glover.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> Defendant Mike Tyson was convicted, following a jury trial, of second degree aggravated assault, N.J.S.A. 2C:12-1b(1). The judge granted the State's motion for extended-term sentencing and imposed a twenty-year term with a ten-year period of parole ineligibility, to be served consecutively to a life term imposed on an unrelated conviction....
>
> Dana Holloway[2] and defendant were involved in a long-term relationship, which produced one son and ended about two years before March 23, 2001.  On that morning, Calloway was driving in Camden when she saw defendant walking down the street.  Calloway was still very angry about an argument that she and defendant had the evening before.  She drove past defendant several times, but he ignored her.  Finally, Calloway stopped.  Defendant came up to her car and the two resumed their argument.  Defendant reached into the car and struck Calloway.  Calloway thrust her left leg out of the open car window and attempted to kick defendant.  He grabbed her leg.  Calloway testified that she turned, causing her leg to twist, and drove away.
>
> Calloway drove a few blocks and flagged down Camden police officer Judy Bailey.  Calloway reported that defendant had assaulted her.  Calloway led Bailey and her partner, Police Officer Craig Wilberry to defendant.  He was arrested. Calloway followed in her car to headquarters, but once there she said that she was in too much pain to get out of the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

[2] The victim's name is spelled three different ways in this summary of facts from the Appellate Division opinion: Holloway, Calloway, and Callaway.

car.  She was transported by ambulance to a nearby hospital.
At the hospital, it was discovered that Calloway had
sustained spiral fractures of the left tibia and fibula.
Surgery was performed to set the fractures.

At trial, Callaway was reluctant to testify against
defendant.  She testified only under the compulsion of a
subpoena.
In summation, Assistant Prosecutor Brian Gallagher
commented:

> Counsel very correctly read the diagnosis of Miss
> Calloway's injury.  You saw her.  She's [a] fully grown
> woman, 37 years old.  About a year and a-half ago when
> she was 35 she suffered a very brutal injury inflicted
> by a very brutal man, Mike Tyson.  Very brutal thing.
> She had a spiral fracture of the two bones in her lower
> leg, tibia and fibula.
>
> You might have heard something in the press reports
> about assaults on small children.  Child abuse assaults
> where there's manifestation of spiral fracture.  What
> it means the bones -- limb was twisted until it broke.
> I submit to you that it's unheard of to hear an assault
> like that committed on an adult, fully adult.  It's
> manifestation of the brutality of this injury how much
> force it takes that you have to twist the limb of a
> fully adult person to get it to break.

There was no objection to these remarks.

Later in his summation, the Assistant Prosecutor said:

> There's no reference to [any extraneous cause for
> Calloway's injuries].  The only reference you'll see is
> that she told [the treating physicians] what happened.
> That her leg was twisted until it broke.  Tibia and
> fibula, both bones.  I have to keep going back to that.
> You might have read about spiral fracture before and it
> refers to young child there has to be some sort of
> revulsion in you.  Someone twists a bone that hard it
> breaks.  Imagine a 34-year-old adult, how hard you have
> to twist.  Leg was twisted.  Discharge summary that I
> first noted was obviously created when she was
> discharged a couple days later after she underwent two
> surgeries.  There are many other notes made
> contemporaneous to the treatment by doctors, by nurses,
> by the surgeon, by the ambulance personnel.  There are

> no other injuries on her body except for twisting of her leg. Twisted until both bones broke.
>
> There was no objection to these comments either.
>
> The final day of trial was Wednesday, December 11, 2002. The judge finished charging the jury after 4:30 p.m. The judge instructed the jurors to first decide whether they wished to deliberate that evening or return the next day. Several minutes later, the jury sent out a note stating, "All will to stay, but one. Can the alternate sub." With the agreement of counsel, the juror who did not wish to deliberate that evening was excused and the alternate was sworn as a deliberating juror. It is undisputed that the judge did not ask the jury to commence its deliberations anew.
>
> <u>State v. Mike Tyson</u>, No. A-4891-02T4 (App. Div. July 13, 2004 (slip op. at 2-4).

B.   <u>Procedural History</u>

Petitioner was charged in Camden County Indictment number 2720-9-01 on September 12, 2001. He was convicted of second degree aggravated assault (N.J.S.A. 2C:12-1b(1). The State filed a motion for an extended term based on the Three Strikes law, N.J.S.A. 2C:43-7.1 and based on Tyson's status as a persistent offender, pursuant to N.J.S.A. 2C:44-3a. The court granted the State's motion and, on March 7, 2003, Tyson was sentenced to a 20 year term with a 10 year parole ineligibility period (to be served consecutively with a sentence that he was already serving); the judgment of conviction was filed on March 20, 2003.

Petitioner filed notice of appeal in the Superior Court of New Jersey, Appellate Division (Docket Number A-4891-02T4) on May 22, 2003. The Appellate Division affirmed the judgment of

conviction on July 13, 2004.  Petitioner then filed his petition for certification in the New Jersey Supreme Court.  That petition for certification was denied on October 28, 2004.

Petitioner filed for Post-Conviction Relief ("PCR") on January 21, 2005 and was assigned counsel on April 7, 2005.  The PCR Petition was denied when the court ruled on August 11, 2006, that Petitioner did not establish a prima facie case to warrant an evidentiary hearing.  Petitioner then appealed that ruling in the Superior Court of New Jersey, Appellate Division (Docket Number A-5690-06T4) on June 27, 2007.  The ruling below was affirmed on September 15, 2008.  On November 19, 2008, Petitioner filed a petition for certification in the New Jersey Supreme Court, which was denied on December 15, 2008.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law,

the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).]

### III. ANALYSIS

Petitioner asserts the following claims: ineffective assistance of trial counsel, prosecutorial misconduct, and the imposition of an extended term violated defendant's due process rights.

As to the first two grounds, Respondents contend that since no prosecutorial misconduct existed, the claim of ineffective assistance of counsel that was based on the alleged prosecutorial

misconduct also did not exist. As to ground three, Respondents contend that Petitioner has failed to state a claim as to why the imposition of the extended sentence violated his due process rights.

A.  Claims Related to Prosecutor's Statements

   1.  Ground Two: Prosecutorial Misconduct

The Court will address Ground Two first as Ground One hinges on the outcome of this claim in which Petitioner alleges that the prosecutor "committed misconduct wen he commented on matters that were inflammatory and not in evidence."

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

9

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel.  Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

On direct appeal, the Appellate Division noted that they were "displeased and perplexed by the Assistant Prosecutor's

10

comments" but ultimately rejected Petitioner's claims of prosecutorial misconduct, stating that:

> It is distressing that no objection was interposed, nor limiting instruction given. Apparently, neither counsel nor the judge recognized the impropriety of the comments. On the other hand, the evidence of defendant's guilt was direct and overwhelming. We also note that it was patently obvious that the victim was an adult woman, not a child. In light of these factors, we conclude that although the Assistant Prosecutor's remarks were improper, they did not deprive defendant of a fair trial.
>
> State v. Mike Tyson, No. A-4891-02T4 (App. Div. July 13, 2004 (slip op. at 6).

Here, this Court agrees with the Appellate Division that, given the overwhelming evidence in favor of defendant's conviction, and even though the prosecutor's statements were improper, the statements did not deprive Petitioner of a fair trial and as such he is not entitled to relief on this claim.

2.  Ground One: Ineffective Assistance of Trial Counsel

In Ground One of his Petition, Petitioner asserts that he was denied effective assistance allegedly because trial counsel "failed to object to statements made by Prosecutor Gallagher that exceeded his expertise on matters not in evidence" and because he "failed to object to inflammatory statements made by Prosecutor Gallagher."

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of

11

counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the

12

facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

This Court finds that trial counsel's performance did not fall below and objective standard of reasonable professional assistance such that the outcome would have been otherwise different but for counsel's alleged errors.  The Appellate Court found, and this Court agrees, that no prosecutorial misconduct existed.  The state court's determination has not been shown to have resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding within the meaning of 28 U.S.C. § 2254(d)(1) & (2), supra.  Thus, there was no ineffective assistance of counsel stemming from failure to object to the prosecutorial misconduct.  Petitioner is not entitled to relief on this claim.

B.   Ground Three: Imposition of Extended Term

Petitioner contends that the court violated his due process rights by imposing the extended sentence, stating that "[t]he sentencing court did not allow a jury to determine the facts supporting its decision to impose an extended term sentence."

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment:  "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime

14

in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983). Additionally, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review--"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"--that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," id. at 1001 (citation omitted) quoted with approval in Ewing, 538 U.S. at 23.

Although Petitioner did not raise this exact issue regarding jury consideration of the extended sentence until his petition for certification, as to Petitioner's contention that his sentence should be reduced, the Appellate Court stated:

> We disagree [that the sentence should be reduced]. This forty-two year old defendant has a history of five indictable and four disorderly persons convictions. He has been sentenced to State Prison terms previously. Just prior to the start of this trial, he was sentence to a life term for an unrelated conviction.
>
> [...]
>
> We conclude that the sentencing factors identified by the judge are supported by the evidence. The aggravating factors preponderate and justify imposition of a maximum

15

>    period of parole ineligibility.  The sentence is in accord
>    with the sentencing guidelines and based on a proper
>    weighing of the factors.  State v. Donnell, 117 N.J. 210,
>    215 (1989).  The sentence does not shock our judicial
>    conscience.  State v. Roth, 95 N.J. 334, 354-65 (1984).
>
> State v. Mike Tyson, No. A-4891-02T4 (App. Div. July 13,
> 2004 (slip op. at 6-7).

Here, Petitioner was convicted of second degree aggravated assault.  Petitioner's criminal record and personal history includes prior convictions and sentences including a life term sentence.  He has presented no cogent argument why his sentence is unconstitutional.  This Court finds that Petitioner's sentence is not "grossly disproportionate" to the crimes he committed.  Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Under these standards, the Court will deny a certificate of appealability.

## V.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


 s/ Jerome B. Simandle
Jerome B. Simandle
United States District Judge

Dated:  **February 3, 2011**